UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 135, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) Cause No. 1:16-cv-176-WTL-DKL |
| | ) |
| SYSCO INDIANAPOLIS, LLC, | ) |
| | ) |
|   Defendant. | ) |

## ENTRY ON MOTION TO DISMISS

This cause is before the Court on Defendant Sysco Indianapolis, LLC's, Motion to

Dismiss (Dkt. No. 13).  The motion is fully briefed, and the Court, being duly advised, hereby

**DENIES** the motion for the reasons set forth below.

### A.  Factual Background

This case arises out of a dispute between the Plaintiff, Teamsters Local Union No. 135

("Union"), and the Defendant, Sysco Indianapolis, LLC ("Sysco"). The facts as alleged by the

Union in its Complaint are as follow.

The Union and Sysco entered into a collective bargaining agreement ("CBA") effective

March 3, 2013. While negotiating that agreement, "Sysco proposed ending its participation in

and withdrawing from the Central States, Southeast, and Southwest Areas Pension Fund

("Central States") for bargaining unit employees and enrolling them in the Sysco Corporation

Retirement Plan."  Complaint at ¶ 8.

> As an inducement to obtain the Union's agreement on its proposal to withdraw from
> Central States and enroll the employees in its retirement plan, Sysco representatives
> explained to the Union's negotiators that in addition to the base retirement benefits
> under the Sysco plan, the bargaining unit employees would receive a Supplemental
> Early Retirement Benefit ("SERB") of $500 per month between the ages of fifty-
> five and sixty-five. The SERB would be available to bargaining unit employees

> who retired before the age of sixty-five, provided they had twenty years of overall service with Sysco, at least ten of which were in delivery and/or warehouse positions, and at least two of which were immediately preceding retirement.

*Id.* at ¶ 9.  The Union agreed to Sysco's proposal.  However, after the CBA was ratified, "Sysco representatives informed the bargaining unit employees that there were additional requirements for retiring employees to obtain the SERB, which would effectively make the SERB an illusory benefit, and which were not mentioned when the CBA was negotiated and ratified."  *Id.* at ¶ 10. That led to some bargaining unit employees who retired early with the expectation of receiving the SERB not being eligible for it.

John Seward, a member of the bargaining unit, filed a grievance on behalf of himself and all other bargaining union employees regarding the "post-ratification changes to the SERB" and asking that the bargaining union employees "be made whole in all ways."  *Id.* at 14.  The grievance progressed through the stages set forth in the CBA and ultimately was heard by the Joint Grievance Committee ("JGC").  On January 22, 2014, the JGC summarily ruled in favor of the Union.

Pursuant to Article 9 of the CBA, "[a]ny decision reached by a majority of members of the Joint Grievance Committee which is not referred to arbitration by either party within (10) calendar days from receipt of the written decision shall be final and binding on the parties." Dkt. No. 2 at 7.  Sysco apparently did not seek arbitration of the decision.  The Union now asks this Court for the following relief:

1. A permanent injunction enforcing the Joint Grievance Committee decision and directing Sysco to comply with the decision by either providing the equivalent of the SERB benefit directly to all eligible bargaining unit employees who retire in the future, or by reforming the terms of the Sysco Retirement Plan to ensure that the SERB benefit is paid to all eligible employees; and

2. A judgment confirming and enforcing the Joint Grievance Committee in [sic] decision in its entirety and directing Sysco to make the employees and the Union whole for monetary damages incurred as a result of its unlawful refusal to comply with the decision.

Complaint at p. 5.

### B. Discussion

Sysco moves to dismiss the Union's Complaint for failure to state a claim pursuant to Rule 12(b)(6).  In resolving this motion, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (2013).  The Court addresses each of Sysco's arguments in favor of dismissal below.

#### 1. *ERISA Exhaustion*

Sysco's first contention is that the Union is seeking an award of SERB benefits under the Sysco Corporation Retirement Plan ("Plan"), which is an ERISA plan, and therefore its claim is subject to the requirement that all administrative remedies under the Plan must be exhausted prior to filing suit.  In response to this argument, the Union contends that the complaint arises under § 301 of the Labor Management Relations Act rather than ERISA.  Therefore, the Union argues, it is exhaustion under the CBA, not ERISA exhaustion, that is relevant to this case.

Even assuming that Sysco is correct that ERISA is somehow relevant to this case—an issue the Court need not resolve at this point—Sysco's argument is not well-taken.  Although ERISA generally requires exhaustion of plan remedies before bringing suit, exhaustion is an affirmative defense. *See Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 729-30 (7th Cir. 2007) (holding that a plan did not waive "exhaustion as an affirmative defense" because the plaintiffs did not suffer "any prejudice from the way in which the Plan brought its exhaustion argument into the case").  This approach is consistent with

judicial treatment of exhaustion in other contexts: "the usual practice under the Federal Rules is

to regard exhaustion as an affirmative defense." *Jones v. Bock*, 549 U.S. 199, 212 (2007); *see*

*also Gray v. U.S.*, 723 F.3d 795, 798 n.1 (7th Cir. 2013) (noting that "exhaustion is a (non-

jurisdictional) affirmative defense").  Dismissal for failure to plead ERISA exhaustion therefore

would be improper, because a complaint generally need not address potential affirmative

defenses.  There is no requirement that a complaint specifically plead facts related to exhaustion

in order to survive a motion to dismiss. *See Jones*, 549 U.S. at 212-14 (holding that an inmate is

not required to specially plead or demonstrate exhaustion in his civil rights complaint under the

Prison Litigation Reform Act); *Davis v. Ind. State Police*, 541 F.3d 760, 763 (7th Cir. 2008)

("Complaints need not anticipate, and attempt to plead around, potential affirmative defenses.").[1]

Accordingly, the Union's Complaint is not subject to dismissal for failure to plead facts directly

relevant to the question of exhaustion.

---

[1]Sysco urges the Court to follow a line of cases that hold that the general rule that a complaint need not plead around potential affirmative defenses does not apply in the ERISA context.  Preeminent among these authorities is the Eleventh Circuit's decision in *Byrd v. MacPapers, Inc.*, in which the Court determined that the strong policy considerations in the ERISA context justify requiring plaintiffs to affirmatively plead exhaustion. *See* 961 F.2d 157, 160 (11th Cir. 1992) ("Policy considerations supporting the exhaustion requirement include reducing the number of lawsuits under ERISA, providing a nonadversarial method of dispute settlement, providing uniformity of results within a company, and minimizing cost of dispute settlement."). This decision formed the foundation for some district court opinions within the Seventh Circuit that considered the failure to exhaust administrative remedies in resolving motions to dismiss. *See, e.g., Coats v. Kraft Foods, Inc.* 12 F. Supp. 2d 862, 869 (N.D. Ind. 1998) ("[T]he Eleventh Circuit has squarely addressed this issue, and held that pleading exhaustion or the futility of such exhaustion is required under ERISA.") (citing *Byrd*, 951 F.2d 157). The Court finds the reasoning that underpins these cases unpersuasive because the Supreme Court has, subsequent to these cases, reaffirmed that courts should be wary of public policy exceptions to the general pleading rules applicable to affirmative defenses.  *See Jones v. Bock*, 549 U.S. at 212 ("[W]e have explained that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns."). Accordingly, the Court declines to depart from the typical rule that a plaintiff need not plead in anticipation of affirmative defenses such as exhaustion.

### 2. *Statute of Limitations*

Sysco next contends that the Complaint was untimely under the applicable statute of limitations.  As Sysco recognizes, the Union's claim is brought pursuant to § 301 of the LMRA.  Because the LMRA does not contain a statute of limitations for such claims, "unless it is inconsistent with federal law or policy, a federal court will apply the most analogous state limitation period in a section 301 suit."  *Int'l Union of Elevator Constructors v. Home Elevator Co., Inc.*, 798 F.2d 222, 226 (7th Cir. 1986).  In so-called "straightforward" section 301 suits, where "the basic allegation" is "that a company breached the collective bargaining agreement," the analogous state limitation in Indiana is the two-year statute of limitations applicable to "actions relating to the terms, conditions and privileges of employment except actions based on a written contract." *Id. at* 229-30 (considering the statute now codified at Ind. Code § 34-11-2-1).  Here, the Union's basic allegation is that Sysco breached Article 9 of the CBA by failing to comply with a "final and binding" JGC decision.  Therefore, the two-year statute of limitations is appropriate.

Sysco's argument to the contrary is unpersuasive.  Sysco argues that the Union's claim is subject to the ninety-day statute of limitations set forth in Ind. Code § 34-57-2-13 for suits seeking to vacate arbitration awards rather than the two-year statute of limitations for breach of a CBA by an employer.  However, under Indiana law, the ninety-day statute of limitations that applies to actions to vacate an arbitration award does not apply to actions for enforcement of an arbitration award.  *See MBNA Am. Bank, N.A. v. Rogers*, 835 N.E.2d 219, 221 (Ind. Ct. App.), *aff'd on reh'g,* 838 N.E.2d 475 (Ind. Ct. App. 2005) (noting that the Indiana Uniform Arbitration Act "does not provide a limitation period for enforcement" actions) (citation omitted).  Further, "a joint committee is not a genuine arbitration subject to the Federal Arbitration Act (FAA) . . . .

[and a] failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301 jurisdiction—not an FAA action." *Merryman Excavation, Inc. v. Int'l Union of Operating Engineers, Local 150*, 639 F.3d 286, 290 (7th Cir. 2011).  Thus, the statute of limitations for breach of a collective bargaining agreement by an employer—two years— applies, not the much shorter statute of limitations for actions to vacate an arbitration award.  *Cf. Chauffeurs, Teamsters, Warehousemen, and Helpers, Local Union No. 135 v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1025 (7th Cir. 1980) (distinguishing the time period prescribed to "vacate the disfavorable award" in Indiana from "the time limits set for filing a suit to enforce the award").[2]

Finally, Sysco argues in its initial brief—although wisely not in its reply—that the Union failed to satisfy the two-year statute of limitations because it was filed on the same date two calendar years after the JGC decision and, Sysco asserts, the statute ran the previous day.  That argument is clearly without merit.  *See* Fed. R. Civ. P. 6(a)(1)(A) ("When the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period.").  Here, at the earliest, the cause of action was triggered by the JCG decision on January 22, 2014.  Accordingly, the statute of limitations began to run on January 23, 2014, and the Complaint was timely filed on January 22, 2016.

## C.  Conclusion

For the reasons set forth above, Sysco's motion to dismiss (Dkt. No. 13) is **DENIED**.

---

[2]This distinction makes sense from a practical perspective as well.  It is nonsensical to suggest that the party who wins at arbitration or an analogous proceeding must file suit to enforce the ruling within 90 days of the conclusion of the proceeding when the losing party has 90 days to decide whether to accept the ruling and comply with its terms or file suit seeking to vacate it.  The winning party would have no reason to file an enforcement suit unless and until the losing party failed to comply (or announced its intention to refuse to comply) with the terms of the ruling.

SO ORDERED: 11/22/16

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification