UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 135, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | ) Cause No. 1:16-cv-176-WTL-DLP |
| | ) |
| SYSCO INDIANAPOLIS, LLC, | ) |
| | ) |
|     Defendant. | ) |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the Plaintiff's motion for summary judgment (Dkt. No. 32) and the Defendant's cross-motion for summary judgment (Dkt. No. 35). The motions are fully briefed, and the Court, being duly advised, now **GRANTS** the Plaintiff's motion and **DENIES** the Defendant's motion for the reasons set forth below.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "'[W]e look to the burden of proof that

each party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "a court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (internal quotation and citation omitted).

## II. **FACTUAL BACKGROUND**

The background facts of record relevant to the Court's decision follow.[1] Additional facts appear in the Discussion section below.

Teamsters Local Unit No. 135 ("Local 135") represents certain Sysco employees working in Sysco's Indianapolis, Indiana facility. Sysco and Local 135 are parties to a collective bargaining agreement ("CBA") with a duration of March 3, 2013, to March 3, 2018. The prior collective bargaining agreement between the parties required Sysco to participate in the Central States, Southeast and Southwest Areas Pension Fund ("Central States Pension Fund"). During negotiation of the new CBA, Sysco's intent was to withdraw from the Central States Pension Fund and enroll bargaining unit employees in its own pension plan, the Sysco Corporation Retirement Plan ("Sysco's Pension Plan"). During the negotiations, Sysco identified a Supplemental Early Retirement Benefit ("SERB") as a feature of Sysco's Pension Plan. The

---

[1] As Local 135 points out, Sysco did not include a "Statement of Material Facts in Dispute" in its summary judgment briefings. The Court looks to Local Rule 56-1(f) in making assumptions about facts.

2

SERB was described as providing retiring bargaining unit employees with $500 per month in addition to their regular pensions with specific criteria required for receipt of the SERB. At the ratification meeting with bargaining unit employees to discuss the proposed CBA, Local 135 identified the SERB as a feature of Sysco's Pension Plan and described it and what it understood to be the specific criteria for its receipt to the bargaining unit employees. During a company-wide meeting, Sysco also explained the SERB in the same way to the bargaining unit employees.

The bargaining unit employees voted to ratify the CBA, and it went into effect on March 3, 2013, at which point the bargaining unit employees were removed from the Central States Pension Fund and enrolled in Sysco's Pension Plan. "The SERB was one of the reasons that the Union agreed to removing [the] Central States [Pension Fund] from the collective bargaining agreement and replacing it with Sysco's Pension Plan. The SERB was also relied upon by the bargaining unit employees when they voted to ratify the [CBA]." Dkt. No. 34-1 at 2.

### A. The CBA's Grievance Procedure

The CBA defines a grievance as "any controversy, complaint or dispute arising as to the interpretation or application of or the compliance with any provisions on [sic] this Agreement." Dkt. No. 34-2 at 6. The CBA contains in its Article 9 a five-step procedure the parties must follow in the case of a grievance. *See* Dkt. No. 34-2 at 6-7. In step one, an employee must discuss the grievance with an immediate supervisor within ten workdays of the event that gave rise to the grievance and identify the matter as a grievance, and the supervisor must give a verbal reply within ten workdays of the discussion. At step two, if the grievance is not resolved at step one, the grievance must be written and presented to the supervisor within five workdays of having received a response in step one. The supervisor, employee, and shop steward must then meet to try to resolve the grievance. The supervisor must issue a written answer to the steward

3

within ten workdays of the meeting. If not resolved, the grievance moves to step three, where the business agent appeals the grievance in writing to the branch manager within ten days of the steward having received an answer in step two. The branch manager and business agent must meet, and within ten workdays of that meeting, the branch manager must issue a written decision. If the grievance is not resolved, it moves to step four. Step four appears in the CBA, in relevant part, as follows:

> If no satisfactory adjustment is reached in Step 3, the matter shall be referred to the Joint Grievance Committee which shall be a permanent Joint Grievance Committee established for the express purpose of adjudicating grievances that reach this step of the Grievance Procedures . . . .
>
> . . .
>
> The Joint Grievance Committee shall have jurisdiction over grievances involving the Union or its members and signatory companies or employers. It shall be the function of the Joint Grievance Committee to settle grievances of disputes, which cannot be settled between the Union and the Company or Employer in accordance with the terms of this Agreement.
>
> Any decision reached by a majority of the members of the Joint Grievance Committee shall be final and binding on the parties. Should the Joint Grievance Committee fail to reach an agreement by majority action, it shall so certify to the parties.
>
> Any decision reached by a majority of the members of the Joint Grievance Committee which is not referred to arbitration by either party within [ten] (10) calendar days from receipt of the written decision, shall be final and binding on the parties, unless either party elects to proceed to Step Five within ten (10) calendar days of the date of receipt of the written decision by the Joint Grievance Committee.
>
> The Joint Grievance Committee may interpret the Agreement and apply it to the particular case, but they shall however, have no authority to add to, subtract from, or in any way modify the terms of this Agreement or any agreements made supplementary hereto.

*Id.* at 7. At step five, either party may choose to submit within ten working days after the completion of step four the Joint Grievance Committee's decision to arbitration. The arbitrator,

4

like the Joint Grievance Committee, "shall have no authority to add to, detract from, alter, amend or modify any provision of this Agreement or impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement or to alter any wage rate or wage structure." *Id.* "The decision of the arbitrator shall be final and binding upon all parties." *Id.*

### B. The Grievance

In November 2013, a dispute arose between the parties regarding the SERB. John Seward, Local 135's union steward, filed a grievance on behalf of himself and all bargaining unit employees alleging a violation of the CBA's "Article #18 Pensions - and all that may apply." Dkt. No. 34-3. The grievance reads as follows:

> At the time of our ratification vote in March, we were told that all bargaining unit employees would receive $500 a month above our normal pension until [we] reach age 65. At that time[,] the $500 would no longer be given to the retiree. Now the company says there are certain criteria that needs to be met. These stipulations were never explained to the bargaining until at the time of ratification. We would like to be made whole in all ways.

Dkt. No. 34-3.

The grievance was unresolved at steps one through three of the CBA's grievance procedure and moved to step four, the Joint Grievance Committee. On January 22, 2014, the Joint Grievance Committee reached the following unanimous decision supporting Local 135: "Based on the facts and evidence presented, the claim of the Union is upheld." Dkt. Nos. 34-4; 34-5. At some point after the Joint Grievance Committee's decision, Sysco referred the matter to arbitration. On July 7, 2014, Sysco withdrew its request for arbitration, stating that "its request for arbitration here [is] moot." Dkt. No. 36-4 at 4. It reasoned that "[a]t the time this grievance was filed, no eligible employees had sought SERB benefit under the [Sysco's Pension Plan] agreed to in our new contract.[] Thus, there was no decision about individual eligibility and no one to make whole with respect to it." *Id.* Simultaneously, Sysco "notified [Local 135] in

5

writing that any complaints relating to the payment of retirement benefits must be resolved using the procedures under [Sysco's Pension] Plan," Dkt. No. 37 at 5 (citing Dkt. No. 36-4 at 4 ("Should [Local 135] contend that any employee retiring subsequent to the grievance is eligible for SERB and has not received it, please allow us to discuss the matter with you. If we are unable to reach agreement, the issue should be presented to the procedure under Article X of [Sysco's Pension Plan], where exclusive jurisdiction to resolve disputes concerning the benefits under that plan lies")).

### III. PARTIES' POSITIONS

Local 135 filed its Complaint to Enforce Joint Grievance Committee Decision in this Court alleging, pursuant to 29 U.S.C. section 185, Section 301 of the Labor Management Relations Act ("LMRA"), that Sysco breached its contract with Local 135 by refusing to comply with the Joint Grievance Committee's decision. Through this action, Local 135 seeks to enforce the Joint Grievance Committee's decision.

In its summary judgment pleadings, Local 135 argues that Sysco waived "defenses that were not raised in the underlying arbitration proceeding or in a Section 301 action to vacate the award." Dkt. No. 33 at 9. It contends that "Sysco did not raise a single challenge to the arbitrability of the grievance before the Joint Grievance Committee," "did not pursue arbitration under Step 5," and "failed to [timely] file an action to vacate the Joint Grievance Committee's decision." Dkt. No. 33 at 12. It maintains that, as a result, "Sysco is barred from seeking to vacate the [Joint Grievance Committee's] award and from raising any affirmative defenses,"

6

concluding that "Sysco agreed to the final and binding decision of the [Joint Grievance] Committee and has no basis for avoiding enforcement." *Id.* at 12-13 (citations omitted).[2]

In response to Local 135's motion for summary judgment and in support of its own motion, Sysco maintains that the Joint Grievance Committee's decision should not be enforced because the grievance was not arbitrable, arguing that the parties "did not agree to arbitrate matters relating to retirement benefits, including the SERB payments [Local 135] seeks on behalf of its members." Dkt. No. 37 at 5.[3]

Sysco provides several bases for its position. It argues that "the proper procedure to challenge the decision of a denial of benefits that a Union member believes is incorrect is to make a complaint through [Sysco's Pension] Plan rather than through the grievance procedures outlined in the CBA." Dkt. No. 37 at 6. Sysco's Pension Plan states that individual claimants "shall have no right to seek review of a denial of benefits, or to bring an action in any court to enforce a claim for benefits prior to filing a claim for benefits and exhausting his rights to review hereunder." Dkt. No. 37 at 9 (citing Dkt. No. 13-2 at 83). Based on this language, Sysco claims that both "the Union and its members were required to [follow the administrative procedures under Sysco's Pension Plan's benefits claim procedure] prior to filing this action." Dkt. No. 37 at 9. Sysco further asserts that Local 135 has failed to exhaust its administrative remedies

---

[2] Local 135 makes other arguments as well, including contending that the Court may not review the merits of the Joint Grievance Committee's decision, but is instead limited to reviewing whether the parties agreed to arbitrate the issue raised by the grievance. In reaching its decision in this Entry, the Court considered but did not need to address this and other arguments.

[3] For ease of reference, the Court cites to Sysco's brief in opposition to Local 135's motion for summary judgment (Dkt. No. 37) rather than its in brief in support of its motion for summary judgment (Dkt. No. 36) because it is identical to its opposition brief, apart from its lack of the opposition brief's section D, its different final paragraph, and two altered citations on page 5.

because it did not follow the process outlined in Sysco's Pension Plan. *Id.* at 8-9. It argues that Local 135's claims are governed by the Employee Retirement Income Security Act ("ERISA"), and "[t]he Seventh Circuit has made clear that employees must exhaust administrative remedies prior to instituting a lawsuit under ERISA." *Id.* at 8.

In addition to questioning the arbitrability of Local 135's grievance, Sysco also raises questions about the merits of the Joint Grievance Committee's decision. Sysco contends that SERB payments "are available only from [Sysco's Pension] Plan," implying that it is not responsible for the payments. Dkt. No. 37 at 6. "An Administrative Committee, as established by the Plan, administers the Plan; it is an entity separate and apart from Sysco Indianapolis LLC."[4] Dkt. No. 40 at 5-6. Accordingly, Sysco concludes, these facts show that "there is no basis for [the] argument" that "it would be unfair for Sysco to prevail here because it is both the Plan Administrator and a party to the CBA." *Id.* Sysco says that it instead "agreed to provide [Local 135's] members with eligibility to [Sysco's Pension] Plan," Dkt. No. 37 at 7, and that "[t]here is no claim that any eligible employee was not permitted to enroll," *id.* at 11-12. Hence, "[h]ere, Sysco cannot be held to have violated the collective bargaining agreement." *Id.* at 12.

Further, it argues that the Joint Grievance Committee's "[a]ward in this case conflicts with the express language of the CBA." Dkt. No. 40 at 4. It argues that "[t]he CBA states that [pension] benefits are made 'subject to all rights, terms and conditions of this Plan,'" where it assumes "this Plan" refers to Sysco's Pension Plan.[5] *Id.* at 1 (citing Dkt. No. 34-2 at 9). Sysco

---

[4] Sysco does not support the statement with citation to record evidence. However, for purposes of this Entry, the Court accepts Sysco's statement as true.

[5] It appears to the Court that the "subject to all rights, terms and conditions of this Plan" language refers only to the Sysco Corporation Employees' 401(k) Plan. *See* Dkt. No. 34-2 at 9 ("All regular full time employees covered by this Agreement shall be eligible for enrollment in [Sysco's Pension Plan] and the Sysco Corporation Employees' 401(k) Plan, subject to all rights, terms and conditions of *this* Plan including any and all additions, deletions or modifications

argues that such language in the CBA "makes clear that the parties did not intend for claims for the payment of retirement benefits to be submitted to the grievance procedure established under the CBA." *Id.*

Sysco contends as well that it has not waived particular arguments not raised before the Joint Grievance Committee. Specifically, it maintains that it "did not waive any arguments regarding the applicability of [Sysco's Pension] Plan to SERB payments or whether the [Joint Grievance Committee] Award . . . draws its essence from the CBA." Dkt. No. 40 at 1. The only argument it makes in support of the lack of waiver is that "it put [Local 135] on notice of its position." Dkt. No. 37 at 10. Specifically, Sysco states that "[o]n July 7, 2014, following the Joint Grievance Committee's decision, Sysco notified counsel for [Local 135] in writing that if any employee believed they [sic] were eligible for, and had not received, SERB payments, then the employee should follow the procedure under Article X of [Sysco's Pension] Plan." *Id.* at 12.

## IV. **DISCUSSION**

"Section 301 of the LMRA grants federal courts jurisdiction over suits for violation of contracts between an employer and a labor organization . . . , and this jurisdiction is understood to include a request to enforce (or vacate) an award entered as a result of the procedure specified in a collective bargaining agreement for the arbitration of grievances." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) (internal citation and quotation marks omitted) (citing 29 U.S.C. § 185(a); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 595-96 (1960) ("*Enterprise Wheel*"); *Evans v. Einhorn,* 855 F.2d 1245, 1253 (7th Cir. 1988) (per curiam)); *see also General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss*

---

made to any and all terms, conditions and benefits of *this* Plan made during the term of this Agreement.") (emphasis added).

9

*& Co.*, 372 U.S. 517, 519 (1963) (federal court jurisdiction includes breach of contract claims for failure to comply with a joint committee award); *Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 639 F.3d 286, 290 (7th Cir. 2011) ("A failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301 jurisdiction.").

The review of the Joint Grievance Committee's award would be limited to "whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award," but would not include a review of "the potential merits of the underlying claims . . . ." *Lippert Tile Co.*, 724 F.3d 939, 944 (7th Cir. 2013) (citations and quotations omitted). Courts take a second look at the merits of the claim when the decision does not appear to "'draw[] its essence from the collective bargaining agreement.'" *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Enterprise Wheel*, 363 U.S. at 597); *see also*, *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 768 (7th Cir. 2005); *Northern Ind. Pub. Serv. Co. v. United Steelworkers of Am. AFL-CIO-CLC*, 243 F.3d 345, 347 (7th Cir. 2001).

In this case, the Court need not examine either question. As the Seventh Circuit has stated:

> A failure to challenge an arbitration award within the applicable limitations period renders the award final. *Int'l Union of Operating Eng'rs, Local 50, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987) [("*Centor Contractors*")]. Where the relief sought is to nullify the arbitration award, the only avenue for such relief is a timely suit to vacate. *Id.* For example, in *Plumbers Pension Fund, Local 130 v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266 (7th Cir. 1985), the employer's defense to an enforcement suit also involved an attack on the validity of an arbitration award. We held that "a defendant's failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." *Id.* at 1268, *quoting Chauffeurs, Teamsters, Warehousemen and Helpers,*

> *Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125 (1981).

*Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996). These principles apply even where a party has "a plausible argument that the arbitrator's ruling was inappropriate and thus subject to modification, correction, or remand." *Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 187-88 (7th Cir. 1996) (in an action brought pursuant to the Federal Arbitration Act, but stating that "the same result would obtain under the LMRA."); *see also Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 432 (7th Cir. 1998) ("The contract may have been invalid, or the clause inapplicable to the dispute, but when [the defendants] made the decision to sit on their collective hands, they waived the right to challenge the outcome later."); *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 652 (7th Cir. 2016) (stating, in dicta, that "[t]hese general rules are correct," when referring to the finality of an award after time has run to seek to vacate it). The Court sees no reason why these same principles are not applicable to the Joint Grievance Committee phase, particularly when Sysco chose to abandon the CBA's arbitration procedure.

In response to Local 135's enforcement action, Sysco essentially seeks to vacate the Joint Grievance Committee's award. It asserts no vacatur counterclaim, which would have been untimely[6], but includes affirmative defenses that would require vacatur as their only logical

---

[6] As the Court explained in its Entry on Motion to Dismiss, Dkt. No. 20, the LMRA does not contain a statute of limitations for claims brought under section 301. As a result, the Supreme Court held that "the timeliness of a s[ection] 301 suit . . . is to be determined . . . by reference to the appropriate state statute of limitations." *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966). To suits seeking to vacate arbitration awards, the Seventh Circuit applies the 90-day limitation found in Indiana's Uniform Arbitration Act, Indiana Code section 34-57-2-13. *See Jefferson Trucking Co., Inc.*, 628 F.2d at 1026-27 (reasoning that, in applying a 90-day limitation on an action to vacate an arbitration award, "the district court correctly deferred to the Uniform Arbitration Act, adopted in Indiana, as the appropriate state statute of limitations").

consequence. The challenges it raises here – to the grievance's arbitrability, to the merits of the award – could have been raised in a suit to vacate the Joint Grievance Committee's decision or a subsequent award by an arbitrator. Sysco, however, did not move to vacate the Joint Grievance Committee's award; nor did it complete the arbitration process outlined in step five of the CBA's grievance procedure, at the conclusion of which it could have moved to vacate an arbitrator's award. Instead, prior to Local 135 commencing this lawsuit, it did nothing further than, on July 7, 2014, make its own determination that its request for arbitration was moot, withdraw from the arbitration process, and have its counsel inform Local 135's counsel that "exclusive jurisdiction to resolve disputes concerning the benefits under [Sysco's Pension Plan] lies" in Article X of that plan.[7] *See* Dkt. No. 36-4 at 4.

Sysco "may not now rebuff the Union's motion to confirm by a belated attack on the [Joint Grievance Committee's] award." *Murphy Co.*, 82 F.2d at 188; *see also Centor Contractors*, 831 F.2d at 1311 ("It is well settled, in this circuit at least, that failure to challenge an arbitration award within the applicable limitations period renders the award final. Thus, those challenges in the nature of grounds to vacate the award may not be asserted as defenses to a subsequent enforcement action.") (citations omitted).

The CBA's grievance procedure states that "[a]ny decision reached by a majority of the members of the Joint Grievance Committee shall be final and binding on the parties." Dkt. No. 34-2 at 7. Because Sysco did not timely seek to vacate the award and otherwise chose not to

---

[7] Sysco appears to conflate the grievance with individual challenges to denials for SERB benefits, deciding to withdraw from the arbitration process based on its assumption that the need for arbitration was moot. In the grievance, however, Local 135 does not assert claims for denial of SERB benefits or seek to enforce individuals' claims for those benefits. Rather, the grievance, in Sysco's words, "alleg[es] that Sysco did not provide the bargaining unit employees with all relevant information about the SERB" at the time of their ratification vote. Dkt. No. 37 at 5.

12

proceed through arbitration, it cannot now challenge the merits of the Joint Grievance Committee's decision as a defense to Local 135's enforcement action. Instead, it must comply with the terms of the Joint Grievance Committee's decision.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Local 135's motion for summary judgment (Dkt. No. 32) and **DENIES** Sysco's cross-motion for summary judgment (Dkt. No. 35). At this time, the Court does not have all of the information it needs to enter judgment in this matter. Local 135 shall within 21 days of the date of this Entry provide the Court with a proposed judgment. Sysco shall file its response within 14 days of Local 135's filing, if it deems a response necessary.

SO ORDERED: 3/9/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification